**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FLUIDTECH, INC.,

       Plaintiff,

                                      Case No. 06-CV-12731

v.

GEMU VALVES, INC.,

       Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
TO TRANSFER VENUE AND TRANSFERRING THIS ACTION TO THE UNITED
STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA**

Pending before the court is Defendant Gemo Valves, Inc.'s "Motion for Transfer

of Venue." This motion has been fully briefed and the court concludes that a hearing on

the motion is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated

below, the court will grant Defendant's motion.

## I. BACKGROUND

Plaintiff is a Michigan corporation with its principal place of business in Wayne

County, Michigan and was a distributor of Defendant's products in Michigan. (Compl.

¶¶ 1, 4, 6.) Defendant is a Georgia corporation with its principal place of business in

Atlanta, Georgia. (*Id.* at ¶ 2.) Defendant is a developer, producer, and manufacturer of

engineered diaphragm valves that conducts business in Wayne County Michigan.

(Answer ¶ 7; Compl. ¶ 2.) Plaintiff originally filed this suit in Wayne County Circuit

Court, but on June 21, 2006, Defendant removed this case to the United States District

Court for the Eastern District of Michigan on the basis of diversity of citizenship. Defendant now seeks to transfer this case to the District Court for the Northern District of Georgia in accordance with the aforementioned provision.

On or about March 11, 1999, Plaintiff and Defendant entered into a Distributor Sales Agreement whereby Plaintiff was granted the right to distribute certain products for Defendant.  (Compl. ¶ 8; Countercl. ¶ 8.)  Plaintiff acted as a distributor of Defendant's products from March 11, 1999 until September 27, 2005.  (Answer ¶ 8.) Pursuant to the contract, Plaintiff was required to "pay all amounts payable to [Defendant] hereunder when due, time being of the essence."  (Countercl. at ¶ 10.)

Defendant avers that, between December 2004 and April 2005, Plaintiff ordered and received inventory but did not remit payment.  (*Id.* at ¶¶ 12-13.)  Defendant points to unpaid invoices from this time period totaling $177,707.50.  In May 2005, Defendant sent Plaintiff a letter wherein it demanded full payment of all invoices.  (*Id.* at ¶ 14.)  On May 7, 2005, Plaintiff proposed a payment plan of $25,000 every two weeks until the balance was paid in full.  (*Id.* at ¶ 15.)  Defendant rejected this proposal and demanded payment of all outstanding invoices, including interest charges, by May 31, 2005.  (*Id.* at ¶ 16.)  On or about May 20, 2005, Plaintiff's representative notified Defendant that it would be unable to pay its outstanding invoices by this date.  (*Id.* at ¶ 18.)

Plaintiff made small payments in June and July, but continued to have an overdue balance.  (*Id.* at ¶ 20.)  On or about August 26, 2005, Defendant sent Plaintiff another letter demanding payment and added an offer to accept the return of certain inventory in exchange for a credit to Plaintiff's delinquent account.  (*Id.* at ¶ 21.)  In this

2

letter, Plaintiff was advised that it would continue to be liable for any remaining debt. (*Id.*)

Pursuant to the Distributor Sales Agreement, the contract was effective through December of each year and was automatically renewed unless either party provided written notice of termination not less than 60 days prior to the expiration of the then-current term. (Compl. ¶¶ 9-10.) On September 19, 2005, Defendant notified Plaintiff of its intention to terminate the Distributor Sales Agreement. (*Id.* at ¶ 3; Countercl. ¶ 22) Plaintiff asserts that, per the Distributor Sales agreement, the contract should have terminated on December 31, 2005. (Compl. ¶ 14.) Defendant terminated the Distributor Sales Agreement effective September 27, 2005. (Countercl. ¶ 22.)

Plaintiff claims to have had standard catalog product on hand totaling in excess of $141,586.00 at the time Defendant terminated the Distributor Sales Agreement. (Compl. ¶ 15.) In early December 2005, Plaintiff returned the remaining inventory to Defendant. (*Id.* at ¶ 16; Countercl. ¶ 23.) After examining the merchandise, Defendant applied a credit of $88,675 to Plaintiff's overdue balance. (Countercl. ¶ 23.) On March 6, 2006, Defendant's attorney sent a letter to Plaintiff demanding payment of $102,788.79 in principal, $19,342.17 in interest, and attorneys' fees of $12,238.10. (*Id.* at ¶ 27.) To date, Plaintiff has not satisfied payment of its outstanding invoices. (*Id.*)

Plaintiff alleges in its Complaint that subsequent to termination of the Distributor Sales Agreement, Defendant began publishing false and defamatory statements regarding Plaintiff. (Compl. ¶ 19.) Specifically, Plaintiff claims that Defendant published statements accusing Plaintiff of selling a competing product while a distributor for Defendant. (*Id.*) As a result of these dealings, Plaintiff filed the instant cause of action

3

alleging three claims: (1) breach of contract; (2) defamation; and (3) intentional

interference with a business expectancy and contract.   Defendant filed a counterclaim,

alleging breach of contract.  Defendant also filed the motion to transfer venue presently

before the court.

The Distributor Sales Agreement states that all orders are subject to Defendant's

"Terms and Conditions of Sale," a document incorporated in the agreement.  (Mot. Ex.

A, Attach. 3.0, § 11.)  According to Plaintiff, the Agreement states in relevant part that:

> Buyer [(Plaintiff)], to the extent it may lawfully do so, hereby submits to the
> jurisdiction of any state or federal court located in Fulton County, Georgia,
> as well as to the jurisdiction of all courts from which an appeal may be
> taken from the aforesaid courts for the purposes of any suit, action or
> other proceeding arising out of any of the Buyer's [(Plaintiff's)] obligations
> under or with respect to this Agreement, and the Buyer expressly waives
> any and all objections that Buyer may have as to jurisdiction and/or venue
> in any of such courts.

(*Id.*)  Defendant claims the above-quoted language no longer applies, and the following

forum selection clause has governed the parties' agreement since 2002:

> 11.  Exclusive Jurisdiction
> In the event of any legal action, buyer, to the extent it may lawfully do so,
> hereby submits to the exclusive jurisdiction of any state or federal court
> located in Fulton County, Georgia.  Buyer further submits to the exclusive
> jurisdiction of all Georgia courts from which an appeal may be taken from
> the aforesaid courts.  The buyer or seller expressly waive any objections
> based on personal jurisdiction or venue in any of these Georgia courts.
> The buyer further agrees that it may be validly served with any legal
> process in connection with the foregoing by the mailing of a copy thereof
> by registered or certified mail at its address shown on the reverse hereof.

(Mot. to Supp. at 4.)

## II. DISCUSSION

Transfer of proper venue is governed by 28 U.S.C. § 1404(a), which provides

that: "[f]or the convenience of parties and witnesses, in the interest of justice a district

4

court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *VanDusen v. Barrack*, 376 U.S. 612, 622 (1964). A district court has broad discretion to grant or deny a motion to transfer [a] case.[1] *Phelps v. McClellan*, 30 F.3d 658 663 (6th Cir. 1994).

"To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). As an initial matter, the court finds that this case could have been brought in Georgia. Defendant is a Georgia citizen and a substantial portion of the events giving rise to this action occurred in Georgia. (Compl. at 2; Countercl. at 3.) *See* 28 U.S.C. § 1391(a). The court therefore considers whether the transfer serves the interest of justice and the convenience of the witnesses and parties. *Kepler*, 860 F. Supp. at 398.

---

[1]Plaintiff's Response asserted that "a motion to transfer venue is not to be granted liberally." (Resp. at 3.) To support this proposition, Plaintiff cites *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) and *Handlos v. Litton Industries, Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969). Notably, neither of these cases are binding upon this court. However, more importantly, both of these cases were decided prior to the Supreme Court's 1972 decision in *Breman v. Zapata Off-Shore Co.*, 407 U.S. 1. *Breman* and its progeny emphasized the importance of forum selections clauses and the discretion granted to federal district courts to uphold such clauses. S*ee, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)*; Phelps v. McClellan*, 30 F.3d 658 663 (6th Cir. 1994)).

In determining if transfer of venue serves the interest of justice and the convenience of parties, federal courts traditionally accord considerable deference to a plaintiff's choice of forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). "Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The burden shifts, however, when the parties sign a contract with a valid forum selection clause. *Id.* "[W]hen a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, *the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute.*" *Id.* (emphasis added).

The parties are in dispute regarding the wording and effect of a clause within the Distributor Sales Agreement. Plaintiff characterizes this clause as a non-exclusive "Jurisdiction" clause, and claims the clause does not prevent Plaintiff from litigating in Michigan. (Resp. at 2-3.) Defendant claims the "Jurisdiction" clause was replaced by an "Exclusive Jurisdiction" clause in 2002, and in any event, under either language, the parties agreed to litigate in Georgia. (Mot. to Supp. at 4.) The court finds this dispute immaterial. Even under the language Plaintiff cites, the court finds the parties agreed to a choice of forum provision in favor of Georgia courts because the phrase "hereby submits" provides an indication of the parties' contractual agreement that litigation arising under the contract would be handled in Georgia. It is settled that forum selection clauses are to be read as "prima facie valid," and are enforceable in federal courts. *Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). In the instant case, no exceptional circumstances are present that would lead the court to determine the

6

contract is unenforceable.  (Mot. at 8.)  As such, for purposes of this motion, the court

finds either contractual provision to be a valid forum selection clause in favor of Georgia

courts.

Plaintiff further contends that the forum selection provision is limited only to suits

that arise out of Plaintiff's obligations with respect to the Distributor Sales Agreement.

(Resp. at 5-6.)  In this assertion, Plaintiff is correct.  However, Plaintiff mistakenly

argues that the present causes of action arise solely out of Defendant's obligations and

not out of its own obligations under the contract.  (*Id.*)  Plaintiff also alleges a claim for

breach of contract.  Plaintiff's breach of its agreement to pay for merchandise received

is a central issue to this claim.  It was because of these overdue invoices that Plaintiff

returned merchandise to reduce the amount of its indebtedness, and that Defendant

eventually terminated the contract.  (Countercl. ¶¶ 12-13, 22.)  Additionally, Defendant

has entered a counterclaim for breach of contract arising out of Plaintiff's alleged breach

of its obligations under the contract.  (*Id.*)  As such, both claims for breach of contract in

the present case *did* arise from Plaintiff's breach of obligations under the agreement;

specifically, its obligation to pay, in a timely fashion, for merchandise received.

Therefore, the forum selection clause does govern the present litigation.

The existence of a forum selection clause is "a significant factor that figures

centrally" when determining if transfer of venue is proper, *Stewart*, 487 U.S. at 29, and

such clauses "should be enforced unless enforcement is shown by the resisting party to

be 'unreasonable' under the circumstances."  *Breman*, 407 U.S. at 10.  Though a choice

of forum provision is not dispositive, a party faces a "'heavy burden of proof' to set aside

7

a forum selection clause on grounds of inconvenience." *United States v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000) (quoting *Breman*, 407 U.S. at 17).

In assessing the possible inconvenience that a transfer of venue would present, a district court should consider factors such as the location of the parties, the location of the witnesses, the relative ease of access to sources of proof, the locus of operative facts, and the forum's familiarity with the governing law. *Overland, Inc. V. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). A plaintiff's choice of forum usually receives great deference, but it does not receive such deference when a forum selection clause is involved. Instead, a non-movant has the burden to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15. Plaintiff fails to meet this burden.

First, Plaintiff asserts that all of their witnesses are located in Michigan, as are some witnesses for Defendant, and that a transfer to Georgia will inconvenience these individuals. (Resp. at 7.) While the convenience of witnesses is considered "the most powerful factor governing the decision of whether to transfer a case," *McCuiston v. Hoffa*, 313 F. Supp. 2d 710, 719 (E.D. Mich. 2004) (citing *Moore's Federal Practice*, § 111.13 [1][F][i]), this is not the case when a forum selection clause governs the action. As another court in this district has stated, "'Inconvenience' is more than just being upset or reluctant about having to drive a few hours in a car or travel . . . by plane." *Silberg v. Zotec Solutions, Inc.*, 2006 WL 1007635, at *4 (E.D. Mich. 2006). Furthermore, Defendant's primary witnesses reside in Georgia. (Reply at 3.) There seems to be a number of witnesses who will have to travel from Michigan to Georgia, or from Georgia to Michigan, depending upon where the case is heard. The convenience

8

of the parties and the witnesses appears to weigh no more favorably for Defendant than Plaintiff.

Second, the convenience of the parties appears to be equally balanced as well. Plaintiff's primary place of business is in Michigan, while Defendant's principal place of business is in Georgia.  (Compl. ¶ 2.)  The distance in this case pales in comparison to that in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), where the Supreme Court upheld a transfer from the State of Washington, Plaintiff's principal residence, to Florida, Defendant's principal place of business, pursuant to a forum selection clause. The court finds that it is equally inconvenient for Defendant to defend the action in this court as it is for Plaintiff to try its action in Georgia.

Third, Plaintiff argues that the accessability of the source of proof favors this case remaining in Michigan as the contract was signed in Michigan, the subject matter of the agreement concerned distribution of products within Michigan, and unsold products were inventoried in Michigan.  (Resp. at 8.)  However, Defendant points out that the Distributor Sales Agreement was terminated in Georgia, the inventory at issue is currently located in Georgia, and the contractual duty to pay for received products was breached in Georgia.  (Reply at 3.)  Therefore, the court finds that this factor does not fall in either Plaintiff or Defendant's favor.

Finally, although Plaintiff notes that the location of documentary evidence supports retaining venue in Michigan, Plaintiff concedes that this is only a minor consideration.  (Resp. At 8)  The location of these documents in Michigan does not override the forum selection clause because transporting documents involves little difficulty.  Furthermore, Defendant points out that the physical inventory returned by

9

Plaintiff, upon which Plaintiff partly bases its breach of contract claim, is located in Georgia.  (Reply at 3.)  Certainly the transfer of these physical products would be more inconvenient than the transfer of documents, a fact that supports the transfer of venue to Georgia.

Although Plaintiff did not address the point in its motion, the court also considers the forum's familiarity with the governing law.  *Kepler*, 860 F. Supp. at 398.  In the Distributor Sales Agreement, the parties stipulated that "the validity and interpretation of [the] agreement shall be governed by the laws of the State of Georgia."  (Mot. Ex. A, Attach. 3.0, § 11.)  Plaintiff's breach of contract claim directly concerns the validity and interpretation of this agreement, and therefore Georgia law will govern at least the contractual aspect of this case.  Although a Michigan federal court is quite capable of interpreting and applying Georgia law, a federal court in Georgia certainly has more experience in doing so.  "It is axiomatic that the construction of state law is best given to a court most familiar with it."  *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992).  Thus, the interests of justice favor Defendant and a transfer of venue to the previously agreed upon Georgia forum.

As discussed above, Plaintiff's original choice of forum in Michigan would typically seem to weigh in favor of maintaining the case in this court.  *In re Ricoh Corp.*, 870 F.2d at 573.  However, a valid forum selection clause is afforded great weight and can trump the original forum.  *Id.*  As a court in this district previously explained, Plaintiff "made its 'choice' of forum when it signed the Agreement which contained the forum selection clause."  *Detroit Coke*, 794 F. Supp. at 219.

10

It appears that Plaintiff's opposition to Defendant's Motion is based on minor inconvenience rather than on a severe denial of justice.  Simply stated, the court does not find that Plaintiff has met its burden to establish a sufficiently serious inconvenience of transfer to Georgia that substantially outweighs any inconvenience of Defendants to defend this action here in Michigan.  Instead, in light of the valid forum selection clause, the court concludes that transfer of venue in this case is appropriate and in the interest of justice.  Therefore, pursuant to 28 U.S.C. § 1404(a), the court will grant Defendant's motion and order that this case be transferred in its entirety to the United States District Court for the Northern District of Georgia.

## IV. CONCLUSION

IT IS ORDERED that Defendant's motion to transfer [Dkt. # 5] GRANTED.

IT IS FURTHER ORDERED that this action be TRANSFERRED to the United States District Court for the Northern District of Georgia.


  S/Robert H. Cleland                                        
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 23, 2006


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 23, 2006, by electronic and/or ordinary mail.


  S/Lisa Wagner                                        
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\06-12731.FLUIDTECH.TransferringVenue.wpd